# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **RICHARD RICHARDSON, JR.,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:17CV00062 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **MELISSA WELCH, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*Richard Richardson, Jr., Pro Se Plaintiff; Richard C. Vorhis, Senior Assistant Attorney General, Office of the Attorney General of Virginia, Richmond, Virginia, for Defendants.*

The plaintiff, Richard Richardson, Jr., a Virginia inmate proceeding pro se, sues the Director of the Virginia Department of Corrections ("VDOC") and several VDOC officials under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5, as well as the Civil Rights Act of 1871, 42 U.S.C. § 1983. Richardson alleges that he has been wrongfully denied the proper observance of the Nation of Islam ("NOI") Month of Fasting in December, according to his beliefs. The matter is before me on the parties' cross motions for summary judgment. After review of the record, I conclude that the defendants' Motion for Summary Judgment must be granted and Richardson's motion must be denied.

# I. BACKGROUND.

The VDOC has centralized consideration of requests for accommodation of inmates' religious beliefs.[1]  All such requests must be forwarded to and considered by the Faith Review Committee ("FRC").  The FRC then gathers information and issues a recommended approval or disapproval of the requested accommodation, with an explanation for the decision.

VDOC prison facilities provide accommodations for believers to observe the NOI Month of Fasting and the similar Muslim fast that occurs during Ramadan, the ninth month of the Islamic lunar calendar.  Among other activities during the Month of Fasting, NOI believers fast during daylight hours and eat their meals before sunrise or after sunset.  As an attempt to permit the observation of the Month of Fasting and Ramadan consistently with the accepted practice of Muslims worldwide, VDOC administrators consult with the Islamic Center of Virginia to determine the dates when these observances occur.

The observance of Ramadan and the Month of Fasting requires VDOC to make numerous temporary adjustments in food preparation and serving, medication administration, and personnel staffing schedules for the group of fasting inmates, all while continuing preparation and delivery of various other

---

[1]  This summary of facts, undisputed unless otherwise noted, is taken from the parties' affidavits and exhibits, ECF Nos. 1, 33, 38, and 60.

types of inmate meals during that period. The Food Services Department must extend staff's work days to prepare and provide meals during hours that differ from the general population meal schedules. Staff prepare special foods and bag meals for distribution during the evening hours to fulfill the recommended daily allowances of nutrition and calories for the fasting inmates. The security staff must take extra measures to monitor inmates' use of the bag meals to ensure that the food is not left in the cells so long that it spoils and creates health hazards. The pill line, normally conducted during daylight hours, must be conducted and completed prior to sunrise for the fast participants. The administrative staff must coordinate two separate tracks of administrative support to differentiate between those prisoners observing the Month of Fasting or Ramadan and those inmates who are not observing. Making all these extensive, temporary changes is a cumbersome and expensive process, requiring extra layers of duties, shift changes, and additional manpower.

VDOC facilities accommodate over thirty different religions and at least one holiday for each of them. Diversions of limited financial and staffing resources for religious accommodations leaves fewer resources to be focused on the central function of VDOC — to maintain the security and safety of prisoners, staff, and the public.

Richardson arrived at Red Onion State Prison ("Red Onion") in June of 2013.[2] In June of 2015, he requested and was approved to receive the Common Fare diet, a special menu provided to inmates whose religious dietary needs cannot be met by the regular VDOC inmate menu. As a condition of receiving Common Fare meals, Richardson is required to accept a certain percentage of the meals offered to him. He is not penalized, however, for failing to eat all of the meals he accepts. Richardson has also attended NOI religious services on Fridays at Red Onion.

Red Onion provided accommodations for observance of Ramadan and the NOI Month of Fasting beginning on the evening of Wednesday, June 17, 2015, with the first Ramadan meal provided on the morning of June 18, 2015. Accommodations ended on the evening of Friday, July 17, 2015. Red Onion also provided NOI fasting accommodations between June 6 and July 5, 2016, and between May 26 and June 24, 2017. Richardson did not file a request to participate in these available accommodations for the NOI Month of Fasting in 2015, 2016, or 2017.

From October 2016 through March 2017, Richardson was assigned to an administrative segregation unit at Red Onion. In this housing status, he could not

---

[2] Richardson has notified the court that he is temporarily confined at Sussex I State Prison ("Sussex I"). Nothing in the record suggests that he will not be returning to Red Onion or that he is not subject to the same religious fasting accommodation policies at Sussex I that he has encountered at Red Onion.

possess or purchase food items from the commissary and received his meals at his cell from correctional officers. On November 9, 2016, Richardson filed a request to Food Service asking for accommodations to observe the NOI month-long fast during the month of December. He claims that according to the Qur'an, as interpreted by Elijah Muhammad, the fast is properly observed in December — to follow the solar calendar and to correct the teachings of Christians that Jesus was born in December, rather than between the first or second week of September. In a response denying Richardson's request, a staff member advised that the VDOC had not authorized accommodation of an NOI fast in December.

Richardson also wrote letters in November 2016 to VDOC Director Clarke and members of the FRC. Their responses advised him as follows: "As of November 15, 1998 Muslim followers of the Honorable Minister Louis Farrakhan were instructed to observe the fast during the Holy month of Ramadan simultaneously with the entire Muslim world. As a result, the Nation of Islam no longer observes the fast of Ramadan during the month of December." Compl. Ex. 9, ECF No. 1-1. One response advised that in a Final Call newspaper article dated August 25, 2009, Minister Farrakhan stated: "The Holy Qur'an tells us that we should fast during the month of Ramadan, and now the followers of the Honorable Elijah Muhammad, having matured in our understanding, are now fasting with the entire Islamic world." *Id.* Based on this information, the defendants advised

Richardson that the VDOC "is in compliance with current teachings of the Nation of Islam by annually observing this fast during the Holy Month of Ramadan." *Id.*

On December 4, 2016, Richardson wrote letters to the defendants, explaining that he is a follower of Elijah Muhammad, not Minister Farrakhan, and thus, observing the Month of Fasting in December is one of the five pillars of his NOI faith. He stated that "[f]aced with choosing between starvation or accepting food that [he was] unable to eat [when received, he had] been accepting the trays" served to him and "storing [his] food in [his] cell," to eat cold during non-fasting hours. *Id.* at Ex. 12. Richardson asked for accommodation of his fast, explaining that "pre-dawn trays, as well as the pre-dawn bags" as served to Ramadan participants in the summer would be "acceptable" for his beliefs. *Id.* He further advised that his beliefs prohibited him from consuming certain "[p]hysical foods of death," such as "collard, kale, and turnip greens, sweet potatoes, black-eyed peas, and horsey beans such as lima beans, pinto beans etc." *Id.* Richardson listed acceptable substitute foods, including tuna or mackerel, rice, peanut butter, cheese, milk, boiled eggs, and bread. Red Onion did not provide the requested mealtime accommodations or food substitutions in December 2015, 2016, or 2017.

Richardson has also complained that the defendants' actions forced him to eat Christmas meals on December 25. He states that all inmates receive "special desserts" on their afternoon tray that day and that Common Fare diet participants

also receive "two tuna fish cakes, all which is not consistent with the regular Common Fare menu." Pl.'s Mem. Supp. Mot. Summ. J. Richardson Aff. No. 2, ECF No. 38-2. The defendants' evidence is that as a Common Fare participant, Richardson would normally be served a Common Fare tray on Christmas Day. On December 25, 2015, however, inmates could choose — without penalty — either the Common Fare or the Christmas meal.

Richardson filed this § 1983 action in February 2017 against A. David Robinson, VDOC Chief of Corrections Operations and VDOC and Red Onion administrators. I construe his Complaint as alleging the following claims for relief:

(1) Red Onion Institutional Program Manager Baker, FRC members Melissa Welch and Bernie Morris, and Clifton Cauthorne, a chaplain at Red Onion, acknowledged the existence of other NOI believers in the world who observe Ramadan in December, but refused to accommodate such an observance by Richardson, in violation of RLUIPA;

(2) Red Onion Warden Earl Barksdale and Cauthorne, notified of acceptable food substitutions and alternatives to accommodate Richardson's December observance of the NOI fast, ignored these requests, and he was forced to eat prohibited foods during the fast, in violation of his right to free exercise under the First Amendment;

(3)  By refusing to permit Richardson to fast during December, defendants pressured him to participate in the NOI Month of Fasting according to the lunar calendar or in Christian ways, such as a special Christmas meal on December 25, in violation of the Establishment Clause;

(4)  Defendants VDOC Director Harold Clarke, Robinson, Barksdale, Morris, and Welch, by failing to accommodate the NOI month of Fasting under both the lunar and solar calendars of that religion, violated Richardson's right to equal protection;

(5)  Defendants' refusal to accommodate the NOI Month of Fasting in December forced Richardson to choose between starvation, sanctions, and consuming religiously forbidden foods during that month, in violation of the Eighth Amendment; and

(6)  Defendants' refusal to correct these wrongs constitutes gross negligence.

The defendants have filed a Motion for Summary Judgment, supported by affidavits from Robinson and Red Onion's Food Service Director, P. Scarberry. Richardson has responded to the defendants' motion, and has filed a Motion for Summary Judgment of his own.  After review of the record, I conclude that the

parties' cross-motions also serve as responses to the opposing motions. Therefore, I will deny Richardson's Motion for Default.

## II. DISCUSSION.

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In short, a motion for summary judgment should be granted when the proof, taken in the form admissible at trial and resolving all factual doubts in favor of the nonmoving party, would lead a reasonable juror to but one conclusion. *Id.* at 247-52. I must "view the facts and draw reasonable inferences in a light most favorable" to Richardson, as the nonmoving party. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

The defendants have filed supporting affidavits and documentation. Accordingly, to survive the defendants' motion, Richardson must present sufficient evidence that could carry the burden of proof of his claims at trial. *See Id.* He "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine [factual] issue for

trial" on which the jury could find in his favor. *Anderson*, 477 U.S. at 248.[3]

"[U]nsupported speculation is not sufficient to defeat a summary judgment motion." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992). To state a cause of action under 42 U.S.C. §1983, the plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Some of Richardson's claims for monetary damages fail at the outset. The defendants are protected by immunity against damage claims for actions taken in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Moreover, monetary damages are not available under RLUIPA for any of the defendants' alleged actions. *See, e.g.*, *Sossamon v. Texas*, 563 U.S. 277, 285-86 (2011) (finding damages not recoverable against defendants in their official capacities under RLUIPA); *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009) (finding no RLUIPA claim for damages available against defendants in their individual capacities).[4] Therefore, I will grant summary judgment for the

---

[3] I have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

[4] These cases address the immunity question only as it pertains to RLUIPA as an exercise of congressional spending power, although the statute also invokes congressional commerce power. 42 U.S.C. § 2000cc-1(b). I am satisfied that

defendants on all claims for monetary damages against them in their official capacities and on the claim for monetary damages under RLUIPA for denial of Ramadan in December 2015-2017. I will, however, address on the merits Richardson's claims for injunctive relief and his constitutional claims for damages.

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). "This [right] encompasses policies that impose a substantial burden on a prisoner's right to practice his religion." *Wall v. Wade*, 741 F.3d 492, 498 (4th Cir. 2014). For constitutional purposes, such a burden is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981), or one that forces him to "choose between following the precepts of h[is] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of h[is] religion . . . on the other hand," *Sherbert v. Verner*, 374 U.S. 398, 404 (1963).

Similarly, "RLUIPA prohibits [state] prisons from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that the burden furthers a compelling governmental interest by the least restrictive means." *Miles v. Moore*, 450 F. App'x 318, 319 (4th Cir. 2011) (unpublished)

Richardson's Complaint does not present a factual basis for a claim of monetary damages under the Commerce Clause nexus of RLUIPA. *See, e.g.*, *Rendelman*, 569 F.3d at 189.

(citing 42 U.S.C. § 2000cc-1(a)). A RLUIPA analysis consists of two steps. The inmate "bears the initial burden to demonstrate that the prison's policy exacts a substantial burden on religious exercise." *Incumaa v. Stirling*, 791 F.3d 517, 525 (4th Cir. 2015). For purposes of a RLUIPA claim, "a substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006).

> The availability to an inmate, in the most general sense, of other means to practice his or her faith is not relevant to the RLUIPA substantial burden inquiry. *Al-Amin v. Shear*, 325 F. App'x 190, 193 (4th Cir. 2009). "Nevertheless, courts properly consider whether the inmate retains other means for engaging in the particular religious activity . . . in assessing whether a denial of the inmate's preferred method for engaging that religious exercise imposes a substantial burden."

*Shabazz v. Johnson*, No. 3:12CV282, 2015 WL 4068590, at *8 (E.D. Va. July 2, 2015) (finding no substantial burden where NOI inmate could self-select from Common Fare diet items to eat only once per day and consume only acceptable vegetarian foods). Moreover, prison practices do not substantially burden an inmate's rights if they merely make his "religious exercise more expensive or difficult," but are "not inherently inconsistent with [his] beliefs." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 735, 739 (6th Cir. 2007) (unpublished). Only if the inmate proves that there is a substantial burden on his religious practice, does "the burden shift[] to the government to prove its

policy furthers a compelling governmental interest by the least restrictive means."
*Incumaa*, 791 F.3d at 525.

Richardson admits that the Common Fare diet provided to him during non-fasting months is consistent with his religious beliefs. He also states that the alternate meal service schedule provided for other NOI fast participants (with breakfast before sunrise and a bag meal and supper after sunset) would meet his personal religious needs during his fast, with only a few food item substitutions. His contentions in Claims (1) and (2) are that prison officials should provide these accommodations to him in December instead of during the month of Ramadan.

I conclude that VDOC policies do not substantially burden Richardson's religious practice of the NOI Month of Fasting. First, he can comply with the majority of his fasting practices simply by participating in the accommodations that the VDOC already provides during Ramadan, instead of observing his fast alone in December. When he is served food items during Ramadan that do not comply with his personal fasting practice, he can simply discard those items and eat the remainder of his meals. He has not presented evidence showing that doing so would deprive him of a significant portion of his nutritional intake.

Second, if Richardson is intent on observing the fast in December, he can make choices under existing food service policies to comply with his dietary beliefs. During his self-administered December Month of Fasting, he can accept

his Common Fare meals, as his program agreement requires, and then simply discard the breakfast and lunch meals. He may be able to save foods from the supper meal that are acceptable under his fasting practices and store them in his cell for four hours to be eaten after sundown. He can certainly purchase acceptable commissary food items to eat at the times permitted by his religious dietary beliefs. These options, available under existing policies, may cost Richardson money and leave him with somewhat fewer calories during the month than he might wish. These inconveniences and costs, however, do not prevent him from observing the fast. He also has not shown that they will impermissibly pressure him to abandon his fasting practice in December 2018 or in future years. Therefore, I will grant the defendants' Motion for Summary Judgment, and I will deny Richardson's motion as to his claims for injunctive relief under RLUIPA and § 1983.

"Under the Free Exercise Clause, a prisoner has a clearly established right to a diet consistent with his religious scruples, including proper food during Ramadan." *Wall*, 741 F.3d at 498. On the other hand, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system" — including "deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone*, 482 U.S. at 348. Thus,

> [W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate

penological interests. This approach ensures the ability of corrections officials to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration, and avoids unnecessary intrusion of the judiciary into problems particularly ill suited to resolution by decree.

*Id.* at 349. To apply this constitutional standard, I must consider the four factors established in *Turner v. Safley*, 482 U.S. 78 (1987).

That test asks: (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right . . . remain open to prison inmates"; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action.

*Wall*, 741 F.3d at 499.

In Claim (2), Richardson seeks monetary damages under § 1983 and the Free Exercise Clause of the First Amendment for the defendants' refusal to accommodate his NOI Month of Fasting in December 2016. They did not provide his meals before sunrise and after sunset or make food substitutions for items in his Common Fare meals prohibited during the fast. As discussed, however, the evidence is that Richardson *did* observe the fast during December 2016 by storing food in his cell. While he did so with the risk of receiving a disciplinary infraction, he offers no evidence that he was actually disciplined in any way for practicing his Month of Fasting by this method. Thus, he has not established that the defendants'

refusal to provide special Ramadan-like accommodations in December 2016 substantially burdened his religious practice, as required to state a free exercise claim. Moreover, even if Richardson could show a substantial burden here, his constitutional claim also fails under the *Turner* factors.

First, there is clearly a "valid, rational connection" between the current VDOC-wide Ramadan accommodation of fasting (with one serving schedule and menu as approved by Islamic experts) and furthering the VDOC's legitimate, stated interests in cost efficient, uniform procedures. This centralized system can be effectively implemented at multiple VDOC institutions to meet the religious needs of the majority of Muslim and NOI inmates. *See DePaola v. Va. Dep't of Corr.*, No. 7:12CV00592, 2014 WL 3956108, at *4 (W.D. Va. Aug. 12, 2014) (recognizing legitimate penological interest in department's centralized determination of acceptable religious accommodations). The VDOC also has a legitimate interest in avoiding a perception that some inmates are favored over others by receiving individualized religious dietary adjustments — which could adversely affect morale and discipline. *See Al-Azim v. Everett*, No. 3:14CV339, 2017 WL 1097219, at *14 (E.D. Va. Mar. 3, 2017), *report and recommendation adopted,* 2017 WL 1100436 (E.D. Va. Mar. 22, 2017). Similarly, "allowing ad hoc adjustments to the master menu at each institution would create a potential for inconsistent interpretations and accommodations of inmates' religious dietary

needs, as well as uncertainty that each inmate's personalized version of the diet provided necessary nutrients and calories." *DePaola*, 2014 WL 3956108, at *4.

Second, as discussed, Richardson had alternative means of practicing his religious fast in December 2016. He could discard foods from his Common Fare meal trays that were unacceptable during his fast, save acceptable food items, and supplement them with commissary food purchases, to be eaten during non-daylight hours. He also had means of exercising his religious beliefs in other ways during that time — by participating in the Common Fare program and by studying and praying in his cell.

Third, the defendants have demonstrated that the schedule change Richardson has requested for a one-inmate December Month of Fasting would have a significant impact on the allocation of prison resources and staff. Food service personnel would have to lengthen their work days and alter their food item purchases for a month to prepare Richardson's special fast meals on a different schedule than the remainder of the inmate population, including other Common Fare participants. Moreover, providing Richardson with a personal fasting month would likely trigger other inmates to request similar individual or small-group religious accommodations and further redirect prison resources from other important issues (like security and safety) to address such requests.

Fourth, Richardson has not demonstrated an easy alternative program the VDOC could implement to accommodate his December fast as he desires without incurring the resource redirections already discussed.

Viewing the evidence in the light most favorable to Richardson, I find no disputed fact by which he could persuade a fact finder that the current VDOC Ramadan program is not reasonably related to legitimate penological interests and, therefore, constitutional.[5]   Accordingly, I will grant the defendants' Motion for Summary Judgment, and deny Richardson's motion, as to Claim (2) under the First Amendment for monetary damages.

---

[5]  I also find that the defendants' evidence is sufficient to establish that providing full thirty-day fasting accommodations for VDOC inmates only during Ramadan, under the guidance of religious experts, furthers compelling state interests by the least restrictive means possible as required under RLUIPA.  An inmate's right to religious exercise under RLUIPA must be balanced against the VDOC's institutional needs of security, discipline, and general administration. *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005).  Clearly, the VDOC has a compelling interest in careful management of limited financial and personnel resources.   The defendants' affidavits indicate that to accommodate Ramadan fasting for thirty days requires significant adjustments in administration and staffing schedules, all of which expends limited VDOC resources, whether for one inmate or one hundred.  As I am instructed when applying RLUIPA standards, I must give "due deference to the experience and expertise" of these VDOC administrators "in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Id.* at 723.   Meeting Richardson's one-man Ramadan accommodation demand would override the VDOC's significant administrative and financial interests. *Id.* at 722 (warning that courts cannot measure any religious accommodation under RLUIPA standard so as to "override other significant interests").  Therefore, I conclude that even if Richardson could show that available fasting accommodations substantially burden his religious practice, those accommodations further compelling penological interests by the least restrictive means.  On this alternative ground, the defendants are entitled to summary judgment as to his RLUIPA claim.

"It is beyond dispute that, at a minimum, the [Establishment Clause of the First Amendment] guarantees that government may not coerce anyone to support or participate in religion or its exercise." *Lee v. Weisman*, 505 U.S. 577, 587 (1992). Richardson's Claim (3) contends that the defendants' failure to provide him fasting accommodations in December is an attempt at "deprogramming" him, that is, to coerce him to adopt other NOI believers' fasting schedule (against his own beliefs) or to participate in Christmas observances with Christian believers in December. Compl. ¶ 49, ECF No. 1. Richardson presents no evidence, however, that he suffers any adverse effect from his choice not to celebrate his fast during Ramadan or his choice to discard unwanted Christmas food items from his December 25 meals.

In providing Christmas desserts and Ramadan accommodations for Muslim and NOI fast participants during Ramadan, the defendants are not "attempting to guide [Richardson] on any particular spiritual path — they are merely attempting to accommodate major religious holidays without compromising the security of the prison." Defs.' Mem. Supp. Mot. Summ. J. 15, ECF No. 33. I cannot find that their actions in so doing offend the Establishment Clause. *See Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 144-45 (1987) (holding that "government may (and sometimes must) accommodate religious practices and . . . it may do so without violating the Establishment Clause"). Richardson's

conclusory claim of religious coercion is mere speculation unsupported by facts and need not be taken as true or as sufficient to defeat the defendants' Motion for Summary Judgment. *See Baber*, 977 F.2d at 875. Therefore, I will grant the defendants' motion, and deny Richardson's motion, as to Claim (3).

Outside the prison context, "[a] proper respect for both the Free Exercise and the Establishment Clauses compels the State to pursue a course of neutrality toward religion, favoring neither one religion over others nor religious adherents collectively over nonadherents." *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 696 (1994). The Equal Protection Clause of the Fourteenth Amendment also requires that similarly situated persons be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To prevail on an equal protection claim, Richardson must demonstrate: (1) "that he has been treated differently from others with whom he is similarly situated"; and (2) that the differing treatment resulted from "intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Even if he meets these requirements or shows that VDOC policies favor accommodation of one NOI sect's beliefs over another's, disparate treatment of similarly situated prisoners passes constitutional muster so long as it is "reasonably related to [any] legitimate penological interests." *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002).

In Claim (4), Richardson asserts that the defendants' refusal to recognize two NOI calendars, both lunar and solar, violates equal protection principles. I cannot agree. First, Richardson is not similarly situated to NOI adherents who fast during Ramadan. Their beliefs are different than his, and they have many more fellow believers in the VDOC than he does; indeed, he fails to identify any fellow believers among the VDOC population. In any event, as discussed, the VDOC policy to accommodate the NOI fast as practiced by the greater number of NOI believers is rationally related to legitimate state interests in minimizing the budgetary and administrative burdens associated with those accommodations in order to retain sufficient resources for other important interests. *See Turner*, 482 U.S. at 89. I will, therefore, grant the defendants' Motion for Summary Judgment, and deny Richardson's motion, as to Claim (4), alleging unequal treatment.

To state a § 1983 claim that prison conditions violated the Eighth Amendment, plaintiff must prove two elements: (1) an objectively "serious deprivation" of "the minimal civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), and (2) the acting official's subjective, "deliberate indifference" to the inmate's health or safety, meaning that the official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994). Richardson fails to make either showing.

First, Richardson has not shown that the defendants, at any time, denied him access to any of "life's necessities," such as nutritionally adequate food. *Rhodes*, 452 U.S. at 347. At the most, he states that when he stored and waited to eat foods until after sunset, those foods were cold and he risked sanctions. He cannot hold any defendant liable for the effects of his own choices, based on his religious tenets, about when or how much to eat from his provided meals. Moreover, Richardson has not shown that, objectively, he suffered any serious physical or mental harm from being denied accommodations for his fast in December. *See Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993) ("If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment."). As he fails to show harm, he has also failed to show any defendant's deliberate indifference to his health or safety. For these reasons, I will grant the defendants' Motion for Summary Judgment, and deny Richardson's motion, as to Claim (5), alleging Eighth Amendment violations.[6]

---

[6] "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Defendants Clarke, Barksdale, Welch, Morris, Cauthorne, and Baker are entitled to summary judgment as to all Richardson's federal claims on the alternative ground of the failure to show their personal involvement in any violation of his rights.

Richardson's Claim (6) alleges a state law claim that the defendants were grossly negligent in failing to correct the alleged violations of his rights by adjusting the fasting accommodations to match his beliefs. Because I have already determined that the defendants did not violate Richardson's federal rights, I find no respect in which any of them acted with gross negligence towards him. I will grant the defendants' motion, and deny Richardson's motion, as to Claim (6).

### III. CONCLUSION.

For the reasons stated, I conclude that the defendants are entitled to summary judgment as a matter of law. It is accordingly **ORDERED** as follows:

1.  The plaintiff's Motion for Entry of Default, ECF No. 63, is DENIED;

2.  The plaintiff's Motion for Summary Judgment, ECF No. 60, is DENIED; and

3.  The defendants' Motion for Summary Judgment, ECF No. 32, is GRANTED.

A separate Judgment will be entered herewith.

ENTER: September 28, 2018

/s/  James P. Jones
United States District Judge